[No. 34479-3-II.   Division Two.   May 30, 2007.]

HANS RAUTH ET AL., *Respondents*, v. LAWRENCE EVANS ET AL., *Appellants*.

*David P. Horton* (of *Law Office of David P. Horton, Inc.*), for appellants.

*Jack B. Micheau* (of *Micheau & Associates Attorneys, Inc.*), for respondents.

*Larry D. Stout* on behalf of Washington Association of Realtors, amicus curiae.

¶1 PENOYAR, J. — Julia and Lawrence Evans appeal from summary judgment in Hans Rauth and Melitta Holland's favor in a commercial real estate transaction. The trial court found that Evanses' inability to timely remedy defects in the septic system amounted to an anticipatory breach of contract. It then ordered specific performance, damages (to be

determined), and attorney fees to Rauth and Holland. We reverse the summary judgment in favor of Rauth and Holland and remand with directions to grant summary judgment to the Evanses.

## FACTS

¶2 On January 6, 2005, Rauth and Holland (hereafter Rauth) entered into two agreements to purchase real estate from Lawrence and Julia Evans (hereafter the Evanses). One contract was for real property and the other for a coffee business located on the land. The parties agreed to a closing date of March 20, 2005. On February 7, 2005, the parties agreed to a closing date of February 28, 2005, Rauth waived all contingencies (which included obtaining financing, inspecting the property's physical condition for the presence of hazardous substances, pest infestation, soil contamination, wetlands, and determining its business feasibility and identifying any financial encumbrances), and the Evanses agreed to have the septic tank pumped and inspected before closing. On February 18, 2005, the Evanses' realtor sent the following e-mail to Rauth's realtor:

> The drainfield failed & so Harry & Juli have spent the last week talking with inspectors, designers and the County to see what could be done to fix it. It appears that "Wild Willy's" [is] responsible for pouring copious amounts of grease into the septic and caused the problem in the first place, thankfully it can be replaced. The Evans[es] are working on getting a new design done. It will then need County approval and the new system will need to be installed. This is not going to be completed by the closing date of Feb 28 so we will need to extend until the end of March sometime. . . . I will know more once the county have [sic] approved the design and we have the bids back for the installation.

Clerk's Papers (CP) at 107. Rauth then provided an addendum to the agreement, changing the closing date to March 21, 2005, "Provided Septic System is properly repaired/replaced as necessary by County approvals." CP at 109. The Evanses agreed to the closing date but changed the proviso

to state: "Provided Septic System is designed & approved by 3/21/05." CP at 110.

¶3 Because the parties could not agree on how to resolve the septic system problem, the transactions did not close. On March 29, 2005, the Evanses' agent wrote Rauth's agent:

> The Evans[es] will not repay any fees and expenses that you have incurred during your feasibility period. Under the standardized Purchase & Sale forms the seller is not under any obligation to make repairs and complete the sale. I have had this validated with the Washington Association of Realtors Legal Assistance hotline. Whilst this situation is regrettable, our hands are tied in this matter, I have therefore instructed our book-keepers [sic] to refund your earnest money.

CP at 111.

¶4 Rauth then filed this action asserting breach of contract, and asking for damages and specific performance. Both parties moved for summary judgment and on February 9, 2006, the trial court granted specific performance and damages to Rauth and dismissed the Evanses' claimed defenses.

¶5 The court made the following undisputed findings of fact:

1. The plaintiffs and defendants[ ] entered into agreements (collectively the "Agreement") for the sale of a business (herein the "business") and real property (herein "real property") as set forth in the plaintiffs' complaint.

2. Paragraph 12 of the agreement to sell the real property contained a provision where the defendants warranted that, to the best of their knowledge, the real property and the business thereon was in compliance with all laws, regulations, codes, and ordinances, and would be upon closing.

3. Closing of the sale of the business and real property was set for February 28, 2005.

4. After the Agreement was executed, the defendants[ ] discovered that the septic system was not in compliance with all laws, regulations, codes, and ordinances.

5. On or about February 18th, 2005, defendant[ ]s through their realtor for the sale of the real property and business, indicated through an email (*see* plaintiff's exhibit "G") to the plaintiffs that they would not be able to bring the septic system into compliance with all laws, regulations, codes, and ordinances, by closing.

CP at 11-12. Based on these findings, the trial court made the following conclusions of law:

1. There are no material issues of fact in dispute.

2. When the defendant sent an email to plaintiffs on February 18th, 2005, indicating that they would not be able to repair the septic system by closing and bring the real property into compliance with all laws, regulations, codes, and ordinances, they anticipatorily breached the Agreement.

3. The defendants are liable for all damages incurred by the plaintiffs for their breaches of the Agreement. Such damages shall be proven at trial.

4. The plaintiffs are entitled to specific performance of the Agreement.

5. The plaintiffs are entitled to their attorney fees and costs incurred due to the defendants' breach.

6. All claims of the defendants are without merit and shall be dismissed.

7. The Court certifies that this is a final judgment subject to appeal as a matter of right and/or a decision determining action.

CP at 12. The Evanses appeal.

## ANALYSIS

### I. Breach of Contract

■ ¶6 The two warranty provisions in the contract read as follows: (1) "Seller makes no representations or warranties regarding the Property other than those specified in this Agreement, Buyer otherwise takes the Property 'AS IS,' and Buyer shall otherwise rely on its own pre-closing inspections and investigations," CP at 73, and (2) "to the best of [the] Seller's knowledge, each of the following is true

*and shall be true as of closing* . . . (c) The Property and the business conducted thereon comply with all applicable laws, regulations, codes and ordinances." CP at 72 (emphasis added).

¶7 While the Washington Association of Realtors[1] seems content with the second portion of the warranty language and argues its plain meaning, general acceptance, and efficacy in the marketplace, these parties have struggled with the clause at length.

¶8 As applied to the septic system in this case, the meaning of the clause is reasonably clear. The Evanses guaranteed that to the best of their knowledge, the septic system complied with legal requirements when they entered into the agreement with Rauth. They also guaranteed that, at closing, they would have the same state of mind; in other words, they would not close unless they still believed that they were selling a lawfully functioning septic system. That analysis is sufficient to resolve the issues in this case, but that is not to say that the clause is a model of clarity.

¶9 The clause combines the concepts of the seller's warranty with the seller's beliefs at two different times: (1) at the time of the earnest money agreement and (2) at closing. The clause also leaves unresolved what remedy exists if a problem develops. Here, for instance, the Evanses were willing to pay the cost of a new septic system and delay closing, but did the contract require them to do this? The clause did not address this contingency for defects discovered in the sale process.

¶10 Applying the clause to this case, the trial court found that the Evanses did not know about the septic system failure until two weeks before closing. When they learned of the failed system, they could not represent that the septic system complied with applicable laws and regulations. For the sale to close according to their warranty and beliefs,

---

[1] We granted the Washington Association of Realtors' RAP 10.6(b) motion to file an amicus brief because the Real Estate Settlement Procedures Act of 1974, 12 U.S.C. §§ 2601-2617, used here is commonly used in Washington.

they had to repair or replace the existing septic system. Even though it is not clear from the contract that the Evanses were required to repair the septic system and proceed with the sale, they were willing to incur this expense in order to sell their property and business to Rauth. It was only when Rauth refused to allow them the time necessary to repair the system so that it complied with county laws and regulations that they repudiated the contract.

¶11 Further, while Rauth waived all other contingencies, he did not waive the results of the septic system inspection. The February 7, 2005 addendum states:

> Purchase price will be $220,000.00 and will close on or before February 28, 2005.
>
> Buyer hereby waives all contingencies.
>
> Seller at Seller's sole cost and expense will have the septic tank pumped and inspected prior to closing.

CP at 94. Because the septic system failed inspection, the sale's agreement's inspection contingency provided Rauth with a single remedy:

> This Agreement shall terminate and Buyer shall receive a refund of the earnest money unless Buyer gives notice to Seller within 30 days . . . of mutual acceptance of this Agreement stating that Buyer is satisfied, in Buyer's reasonable discretion, concerning all aspects of the Property, including without limitation, its physical condition . . . .

CP at 71. When Rauth learned of the problem, he could have either tried to renegotiate the terms of the purchase and sale agreement or had the Evanses return his earnest money. But the parties tried to renegotiate, they did not reach an agreement, and thus the contract expired under its own terms. Rauth had no right to insist on specific performance; he either had to accept the property as it was or ask for his earnest money back. The superior court erred in granting specific performance and damages to Rauth and in denying the Evanses' summary judgment motion.

¶12 We need not address the Evanses' claims of impossibility, error in finding anticipatory repudiation, and error in ordering specific performance because we reverse and remand with directions to grant the Evanses' summary judgment motion.

II. Attorney Fees

¶13 The Evanses request attorney fees on appeal. Rauth does not. The contract specifically provides attorney fees: "If Buyer or Seller institutes suit concerning this Agreement, the prevailing party is entitled to reasonable attorneys' fees and expenses." CP at 74. The Evanses are the prevailing party and are entitled to their fees for this appeal.

¶14 We reverse the order granting summary judgment to Rauth and remand with directions to grant summary judgment to the Evanses.

HOUGHTON, C.J., and VAN DEREN, J., concur.